UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL ALLEN REID,

      Plaintiff,                          Civil Action No. 19-11546

v.

                                    HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## OPINION AND ORDER

Plaintiff Daniel Allen Reid brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. On August 28, 2019, both parties consented to United States Magistrate Judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  Both parties filed summary judgment motions.  For the reasons set forth below, Plaintiff's Motion for Summary Judgment [Docket #14] is GRANTED to the extent that the case is remanded to the administrative level for further proceedings.  Defendant's Motion for Summary Judgment [Docket #15] is DENIED.

## PROCEDURAL HISTORY

On January 29, 2016, Plaintiff filed applications for DIB and SSI, alleging disability as of November 13, 2014 (Tr. 268, 275). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on November 30, 2017 in Falls Church, Virginia (Tr. 87). Administrative Law Judge ("ALJ") John Loughlin presided (Tr. 87). Plaintiff, testifying by teleconference from Mt. Pleasant, Michigan, was represented by attorney Janice Brownson (Tr. 92-109). Vocational Expert ("VE") Mary Everts also testified (Tr. 110-115). On April 24, 2018, ALJ Loughlin found that while Plaintiff was unable to perform any of his past relevant work, he could perform a significant range of unskilled work (Tr. 34-35). On March 27, 2019, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision on May 28, 2019.

## BACKGROUND FACTS

Plaintiff, born September 15, 1964, was 53 at the time of the ALJ's decision (Tr. 35, 268). He completed two years of college and training as an iron worker (Tr. 339). He worked previously as an iron worker (Tr. 339). He alleges disability due to hyperlipidemia, hypertension, and a right leg and back injury (Tr. 338).

### A.    Plaintiff's Testimony

*Plaintiff's counsel prefaced her client's testimony by amending the alleged onset of disability date from November 13, 2014 to June 30, 2015* (Tr. 91).

Plaintiff then offered the following testimony:

Between 2002 and June, 2015, he worked "on and off" as an iron worker (Tr. 93). The job required him to drag up to 100 pounds and stand or walk for the entire workday (Tr. 94). He was unable to work due to severe back, leg, hip, and neck pain (Tr. 95). His upper extremity problems included neck pain radiating to his left shoulder; tendinitis of the left elbow; and Carpal Tunnel Syndrome ("CTS") (Tr. 95). Plaintiff received mental health treatment beginning in 2011 after his wife's death the same year (Tr. 95). Since her passing, he experienced intermittent panic attacks (Tr. 95). His mental health was affected by both her death and his physical problems (Tr. 95).

Plaintiff experienced right calf pain constantly since a November, 2014 "crush" injury when an 80-pound weight was dropped on his leg (Tr. 96). He also experienced difficulty washing dishes and vacuuming due to constant shoulder pain which began in early 2016 (Tr. 96-97). His neck and radiating arm and finger pain/numbness was exacerbated by sitting (Tr. 97). His back problems began in 2001 when he fell four stories and fractured a vertebra (Tr. 98). He underwent surgery and "learn[ed] to walk again," but began experiencing back pain again in 2006 due to arthritis and bulging discs (Tr. 98). He worked intermittently as an iron worker since 2001, noting that "people at the union" sent him out on jobs long enough so he could collect unemployment (Tr. 99). His treatment included physical therapy, massage, acupuncture, NSAIDs, Neurontin, and muscle relaxers (Tr. 99). He also iced his shoulder and back (Tr. 105). The medication reduced but did not eliminate his pain (Tr. 99). He

experienced stomach problems due to the medication (Tr. 100). As a result of the body pain, he was ill-tempered and experienced problems sleeping (Tr. 100).

Plaintiff's most comfortable position was sitting in a reclining chair (Tr. 101). Due to body pain, he shifted positions every hour (Tr. 101). He was unable to sit upright for more than 45 minutes (Tr. 102). His doctor prescribed the use of a cane (Tr. 102). Plaintiff was unable to walk for more than one block (Tr. 102). At the times he aggravated his leg condition, he was unable to exercise for two days (Tr. 102). He was unable to stand for more than two minutes due to leg pain (Tr. 103). He was able to lift a gallon of milk, with difficulty, on a rare basis, and was unable to reach overhead (Tr. 103). He was unable to use a computer for more than 15 minutes at a time due to neck, arm, and finger pain (Tr. 104). On a good day, he was able to clean his house, provided that he took periodic breaks between tasks (Tr. 106). He took an extra pain pill before doing yard work or vacuuming (Tr. 106).

Plaintiff received individual counseling and group therapy once a month, and was seen by a psychiatrist once every two months (Tr. 104). Psychotropic medication did not help his condition but he received good results from counseling (Tr. 104-105). Due to depression and anxiety, he lost interest in previously enjoyable activities such as reading, going to the gym, and watching football with his friends (Tr. 105). His meetings with friends were spoiled when they brought up the subject of his deceased wife (Tr. 107). Plaintiff had lost his ability to drink in moderation and was now attending AA meetings (Tr. 107). He had not used alcohol in the past year except on the occasion of his deceased wife's birthday (Tr. 107). He

thought constantly about his wife and experienced frequent crying jags (Tr. 105-106). Since suffering a traumatic brain injury during the 2001 fall, he experienced short-term memory problems (Tr. 109).

### B.   Medical Evidence

### 1.   Treating Sources[1]

In November, 2014 Plaintiff sought treatment after an 80-pound jack fell on his right leg (Tr. 568). He received treatment from orthopedic surgeon Austin J. Boyle, III, M.D. (Tr. 461). In December, 2014, Plaintiff reported that he had returned to work performing a "sitting" job but reported that his pain was not relieved with NSAIDs (Tr. 461, 468, 471).

January, 2015 records note Plaintiff's report of pain after he stopped wearing a leg brace (Tr. 481). In March, 2015, Dr. Boyle observed a slight limp (Tr. 494). In May, 2015, Dr. Boyle found that Plaintiff could lift up to 30 pounds but required work allowing alternate sitting and standing (Tr. 520). In June, 2015, "work hardening" records note that Plaintiff could lift up to 90 pounds but experienced difficulty squatting (Tr. 531). Dr. Boyle noted that Plaintiff appeared "quite disappointed" upon hearing that opioids would no longer be prescribed (Tr. 535). A July, 2015 MRI of the lower right leg showed "very mild edema" and a suspected mild fibrosis, but was otherwise unremarkable (Tr. 606). In July, 2015, Dr. Boyle noted a normal gait without the use of a cane or crutch (Tr. 545). In August, 2015,

---

[1]Medical records significantly pre-dating the relevant period of June 30, 2015 are included for background purposes only.

Michael F. Iossi, M.D. examined Plaintiff, noting that clinical testing did not explain Plaintiff's report of continued calf pain (Tr. 552). Plaintiff reported that physical therapy exacerbated the condition (Tr. 550). October, 2015 records by Dr. Boyle state that he had been "unable to explain why" Plaintiff continued to report pain from the November, 2014 injury (Tr. 557). November, 2015 physical therapy records note decreased mobility and strength resulting from the November, 2014 accident (Tr. 565). Plaintiff reported limitations in walking, standing, squatting, getting into and out of a car, and transfers from sitting to standing (Tr. 620).

December, 2015, treatment notes by Dr. Boyle state that he had been treating Plaintiff for the right leg injury since November, 2014 (Tr. 434). Dr. Boyle noted that massage therapy did not help the leg condition (Tr. 573). He observed discomfort of the right calf but noted that Plaintiff did not use an assistive device (Tr. 573). Dr. Boyle found that Plaintiff could lift, push, or pull up to 50 pounds with the permanent work restriction of sitting and standing alternatively (Tr. 435). Physical therapy records from the same month showed minimal progress over eight sessions (Tr. 569). Plaintiff reported up to level "seven" pain on a scale of one to ten (Tr. 591).

January, 2016 treatment records by Nurse Practitioner Lindsey Grace note tenderness of the thoracic and lumbar spine; a decreased range of motion; and an antalgic gait (Tr. 629). A May, 2016 MRI of the lumbar spine showed a broad-based herniation at L5-S1 (Tr. 702). April, 2016 counseling records note Plaintiff's report of racing thoughts and auditory

hallucinations (Tr. 737).  Plaintiff endorsed symptoms of anxiety and depression since his wife died in June, 2011 (Tr. 737-738).  He appeared disheveled and depressed (Tr. 739).  Counseling records from later the same month note that Plaintiff was attempting to complete home care tasks and take walks (Tr. 755).  June, 2016 psychological intake records note Plaintiff's report of depression, fatigue, chronic pain, lack of motivation, hallucinations, and poor memory due to a traumatic brain injury (Tr. 718).  Plaintiff denied suicidal ideation (Tr. 719).  He was diagnosed with a depressive disorder with psychotic features and Post Traumatic Stress Disorder ("PTSD") (Tr. 724).

In July, 2016, bone and joint specialist Mark Davis, D.O. noted Plaintiff's report of continued right leg pain (Tr. 657).  Dr. Davis noted a normal gait (Tr. 658).  A bone scan of the lower right extremity showed asymmetric degenerative arthrosis of the right knee (Tr. 668).  Dr. Davis diagnosed Plaintiff with "exercise-induced compartment syndrome" (Tr. 662).  August, 2016 counseling records note that Plaintiff struggled to find a balance between working with his physical limitations and over-exerting himself (Tr. 759).

A September, 2016 MRI of the lumbar spine showed "severe" degenerative disc vacuum phenomenon at L5-S1 (Tr. 699).  The same month, psychiatrist Ali El Tigani Ibrahim, M.D. discontinued Trazodone and started Remeron for psychological symptoms (Tr. 727).  An October, 2016 MRI of the cervical spine showed possible nerve root encroachment at C6 (Tr. 694).  EMG studies showed cervical radiculopathy with denervation, mild CTS, cubital tunnel syndrome, tarsal tunnel syndrome with denervation, and radiculopathy with

denervation from L1 to S1 (Tr. 797). Mental health records from the same month note that Plaintiff denied hallucinations (Tr. 729). In November, 2016, neurosurgeon Thomas O'Hara, M.D. observed that an EMG of the upper and lower extremities showed radiculopathy at C4 through C7; bilateral thoracic and lumbar radiculopathy; and bilateral ulnar neuropathy (Tr. 683, 691). He recommended a bilateral decompressive lumbar laminectomy (Tr. 683).

January, 2017 records by Dr. Davis note Plaintiff's report of severe left shoulder pain (Tr. 664). An MRI of the left shoulder was unremarkable except for teninosis of the supraspinatus tendon (Tr. 666, 672, 789). An MRI of the cervical spine showed moderate degenerative changes at C5-C6 with mild bilateral neural foramina stenosis at C5-C6 and C6-C7 (Tr. 674-675, 787). In February, 2017, John DiBella, M.D. noted weakness and numbness of the left upper extremity (Tr. 776). Dr. DiBella noted a decreased range of cervical spine motion (Tr. 778). In March, 2017, Dr. DiBella noted that Plaintiff received "modest relief" from upper extremity pain with epidural injections at C5-C6 and C6-C7 (Tr. 775). Dr. DiBella attributed Plaintiff's pain to bursitis of the left shoulder (Tr. 775). May, 2017 imaging studies of the cervical spine showed moderately severe spondylosis at C5-C6 with advanced degenerative disc space disease (Tr. 785, 798, 801). July, 2017 treating records by Dr. O'Hara show full strength in all extremities and a normal gait (Tr. 791). Dr. O'Hara noted the conditions of cervical spondylosis, upper extremity radiculopathy, bilateral CTS, cubital tunnel syndrome, degenerative lumbar spine changes with back pain, and lower extremity radiculopathy (Tr. 791). Plaintiff stated that he was "afraid of surgery" but was

open to physical therapy (Tr. 792).

## 2.  Non-Treating Sources

In April, 2015, Mark R. Aschlimann performed an independent medical examination, finding that Plaintiff's "subjective complaints far exceed what would be expected given the nature to the injury and current physical findings" (Tr. 510).  Dr. Aschlimann found that Plaintiff could perform "medium duty capacity" on a full-time basis (Tr. 510).  Dr. Aschlimann noted "evidence of chronic narcotic dependency" (Tr. 510).  He recommended continued physical therapy (Tr. 512).  In April, 2016, Bruce G. Douglass, Ph.D. performed a non-examining review of the treating records on behalf of the SSA, concluding that the alleged conditions of anxiety and depression were not medically determinable impairments (Tr. 166).

## C.  Vocational Expert Testimony

VE Mary Everts classified Plaintiff's past relevant work as an iron worker as skilled and exertionally heavy[2] (Tr. 111).  The ALJ then posed the following set of hypothetical restrictions, taking into account Plaintiff's age, education, and work history:

[L]ight exertional level; assume that the individual can frequently reach

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

overhead with the left upper extremity; can frequently push or pull and handle and finger with both upper extremities; and can frequently push or pull to operate foot controls with the right lower extremity; assume that the individual can occasionally kneel, crouch, stoop and crawl; can occasionally climb stairs and ramps; can never climb ladders, ropes and scaffolds; and can never be exposed to vibrations, unprotected heights and moving machinery parts; also, assume that the individual is able to understand and remember simple instructions; make simple work related decisions; carry out simple instructions; can occasionally deal with changes in the routine work setting and can occasionally deal with supervisors, coworkers and the public[.] [W]ould the individual be able to perform the claimant's past relevant work either as he actually performed the work or as the occupation is generally performed in the national economy? (Tr. 112).

Based on the above restrictions, the VE testified that the hypothetical individual would be unable to perform Plaintiff's past relevant work as an iron worker but could perform the light, unskilled jobs of a sorter (70,000 positions in the national economy); inspector/packer (117,000); and assembler (200,000) (Tr. 112-113).

The VE testified further that if the restriction were further amended to include a sit/stand option allowing the individual to change positions every 30 minutes, the same positions would be available in the following numbers: sorter (20,000); inspector (25,000); and assembler (80,000) (Tr. 113).  She testified that if the individual were further limited by the need to use a cane to walk, or, the need to be off task for at least 20 percent of the workday, all exertionally light work would be precluded (Tr. 114).  She stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") except the testimony regarding postural changes and being off task, which was based on her own professional experience as a vocational counselor (Tr. 114).

### D.    The ALJ's Decision

Citing Plaintiff's treating records, ALJ Loughlin Plaintiff experienced the following severe impairments:  "Right knee degenerative joint disease []; right hip arthritis; left shoulder mild osteoarthritis; cervical spine fusion; essential hypertension; bilateral [] CTS and ulnar neuropathy; depressive disorder; and [] PTSD" but that none of the impairments met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21-22).  The ALJ found that the condition of status-post hematoma/contusion of the right calf non-severe (Tr. 22).  The ALJ found that as a result of PTSD, Plaintiff experienced moderate limitation in understanding, remembering, and applying information; interacting with others; concentration, persistence, or pace; and adaption (Tr. 22-23).

The ALJ found that Plaintiff could perform exertionally light work with the following additional limitations:

> [C]an frequently reach overhead with the left upper extremity, can frequently push or pull and handle and finger with both upper extremities, and can frequently push or pull or operate foot controls with the right lower extremity. The claimant can occasionally kneel, crouch, stoop, and crawl, can occasionally climb stairs and ramps, can never climb ladders, ropes, and scaffolds, and can never be exposed to vibrations, unprotected heights, and moving machinery parts. The claimant is able to understand and remember simple instructions, make simple work-related decisions, carry out simple instructions, can occasionally deal with changes in a routine work setting, and can occasionally deal with supervisors, coworkers, and the public (Tr. 24).

Citing the VE's testimony (Tr. 112-113), the ALJ found that while Plaintiff was unable to perform his past relevant work, he could perform the unskilled, exertionally light

work of a sorter, inspector, and assembler (Tr. 35).

The ALJ discounted Plaintiff's professed degree of limitation (Tr. 31). The ALJ noted that "multiple physicians of record noted that the [] pain complaints were excessively high and inconsistent with objective findings (Tr. 31). The ALJ found "no medical rationale or medical need for the use of [a] cane," citing Dr. Boyle's statement that the use of a cane was "optional" (Tr. 32). The ALJ noted that Plaintiff demonstrated the ability to walk normally on multiple occasions (Tr. 32).

As to the alleged psychological limitations, the ALJ noted that while Plaintiff alleged "persistent suicidal ideation," treating records note the denial of suicidal thoughts (Tr. 32). The ALJ observed that Plaintiff's mental health treatment had been conservative (Tr. 32). The ALJ stated that the alleged short-term memory and concentration problems were accounted for in the RFC for simple instructions and work-related decisions with only occasional changes in the work routine and only occasional interaction with supervisors, coworkers, and the public (Tr. 33).

## STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted). The district court reviews the final decision of the

Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*). Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)). However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff disputes the Residual Functional Capacity ("RFC") found in the administrative opinion, contending that the finding that he could perform exertionally light work was "fashioned [] out of whole cloth." *Plaintiff's Brief,* 15, ECF No. 14, PageID.882. He also contends, in effect, that the RFC does not adequately address his psychological limitations due to depression and anxiety. *Id.* at 886. He argues that he is entitled to a

-14-

remand for either an award of benefits or further fact-finding. *Id.* at 889.

An RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Security*, 276 F.3d 235, 239 (6th Cir. 2002). The "RFC is to be an 'assessment of [a claimant's] remaining capacity for work' once her limitations have been taken into account" *Id.* (*citing* 20 C.F.R. § 416.945). In determining a claimant's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. §§ 404.1545(a)(1); 416.945 (RFC must be based on all "relevant evidence"). In crafting the RFC, the ALJ must consider the alleged physical, mental, and environmental restrictions. §§ 404.1545(b-d); 416.945; SSR 96-8p, 1996 WL 374184, at *6 (June 2, 1996). However, an ALJ is permitted to draw from multiple medical sources in whole or part in crafting the RFC. *Rudd v. Commissioner of Social Security*, 531 F. App'x 719, 728 (6th Cir. September 5, 2013); SSR 96-8p at *2.

The ALJ provided a lengthy rationale for the RFC for a significant range of exertionally light, unskilled work. As to the psychological conditions, the ALJ found that Plaintiff was restricted to unskilled work and limited to simple instructions, occasionally work-related changes in routine, and occasional interaction with coworkers, supervisors, or the public due to the psychologically based limitations of moderate limitation in interacting with others and concentration, persistence and pace resulting from depression and PTSD (Tr. 21, 24). I find no error in the ALJ's choice of restrictions to account those psychological conditions. Plaintiff's physical treating records show that he was capable of interacting with

others effectively on an occasional basis.  The mental health records indicate that he showed reduced psychological symptoms with medication and counseling within a few months of beginning treatment (Tr. 699).  As to the concentrational limitations, the RFC's restriction to unskilled work with simple instructions and only occasional work-related changes in routine adequately accounts for moderate concentrational limitations (Tr. 23).  *See Smith-Johnson v. Commissioner of Social Sec.*, 579 Fed. Appx. 426, 437, 2014 WL 4400999, *10 (6th Cir. September 8, 2014)(moderate concentrational limitations adequately addressed by restricting the claimant to unskilled, routine, repetitive work); *See also Hurren v Commissioner of Social Sec*, 2020 WL 2858811, at *7 (E.D. Mich, May 4, 2020)(*Report and recommendation adopted sub nom*., 2020 WL 2849984 (E.D. Mich, June 2, 2020)(remanded for further proceedings on other grounds)("unskilled, simple, and routine tasks with 'few changes in the workplace'" sufficient to address moderate concentrational limitation).

The administrative determination also contains a lengthy discussion of the physical treating records and the ALJ's reasons for adopting some of the medical findings and rejecting others.  The ALJ noted that the imaging and clinical observations from December, 2014 through December, 2015 did not support Plaintiff's claim of intractable lower extremity pain (Tr. 25-26).  He cited the records from that period showing a normal gait and the ability to walk without an assistive device (Tr. 26).

The ALJ's rationale for the RFC and for discounting the allegations of disabling limitation appears to rely heavily on records created before the end of 2015 rather than the

more recent records and imaging studies showing a decreased range of motion, antalgic gait, cervical and lumbar spine abnormalities and CTS (Tr. 629, 683, 688, 691, 694, 699, 702, 797). Plaintiff is correct that as a rule, "updated" medical records are to be accorded more weight than older ones. *See Brooks v. Commissioner of Social Sec.*, 531 Fed.Appx. 636, 642 (6th Cir. August 6, 2013)(ALJ adoption of non-examining source's earlier opinion over the more recent examining findings grounds for remand). However, the adoption of the older records over newer ones does not automatically constitute error. An ALJ is not barred from according greater weight to the older records provided that he give some indication that he considered the more recent evidence. Courts "require 'some indication that the ALJ at least considered these new facts before giving greater weight to an opinion that is not based on a review of a complete case record.'" *Brooks*, 531 Fed.Appx. at 642 (6th Cir. August 6, 2013)(*citing Blakley v. Commissioner of Social Sec.*, 581 F.3d 399, 409 (6th Cir. 2009))(internal citations omitted). The ALJ's five-page discussion of the records from January, 2016 forward provides at least "some indication" that he considered the more recent evidence. The RFC for a range of light work also reflects a modification of the ALJ's adoption of Dr. Boyle's December, 2015 finding that Plaintiff could perform exertionally medium work (Tr. 33, 435)

Notwithstanding, an unresolved dissonance remains between the "great weight" accorded Dr. Boyle's December, 2015 finding that Plaintiff could perform medium work and the rejection of Dr. Boyle's accompanying finding that Plaintiff required a permanent

sit/stand option (Tr. 33).  First, Dr. Boyle's opinion is supported by Plaintiff testimony that he was unable to stand for more than two minutes at a time, as well as the records from January, 2016 forward documenting lower extremity radiculopathy  (Tr. 103).

Further, while the ALJ purportedly adopted Dr. Boyle's December, 2015 findings, he declined to adopt Dr. Boyle's opinion that Plaintiff required a sit/stand option (Tr. 33).  The ALJ stated that he did not find "sufficient objective support for a determination" to justify a sit/stand option but that he "provided for different physical limitations" in the RFC and that he "considered all" of the "physical impairments" in crafting the RFC (Tr. 33).  Admittedly, the ALJ's RFC for light work is more restrictive than Dr. Boyle's finding that Plaintiff could perform medium work.  However, the treating record does not contain evidence contradicting Dr. Boyle's opinion that Plaintiff would require a sit/stand option.  If anything, the objective studies and clinical findings from January, 2016 forward more strongly reflect the need for periodic postural changes.

The Court is mindful that in response to an "alternative" hypothetical question, the VE testified that the inclusion of a sit/stand option allowing for position changes every 30 minutes would allow for a significant range of work.  Thus, if the 30-minute sit/stand option had been included in the RFC, Plaintiff would still have been found not disabled at Step Five.  However, Dr. Boyle's sit/stand opinion did not specify at what intervals that Plaintiff would be required to change positions.  A work limitation of changing position every 30 minutes (as posed in the alternative hypothetical question) is far from the restrictive "sit/stand" option.

"The imposition of a sit/stand at will [option] requirement allowing the individual to change positions at any time rather than prescribed intervals, is the most restrictive of all the sit/stand limitations." *Ferguson v. Commissioner of Social Sec.*, 2013 WL 530868, at *5 (E.D. Mich. January 23, 2013)(*citing* SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996)).  The VE did not provide evidence of how a sit/stand option every 15 minutes, 10 minutes, or "at will" would effect the job numbers, although a limitation more restrictive than the 30-minute one posed by the ALJ would surely have further eroded the job numbers for light work.  "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (January 1, 1983). "Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing - the primary difference between sedentary and most light jobs." *Id.*  Because the vocational testimony was made in response to a hypothetical question possibly excluding key limitations, it does not constitute substantial evidence.  *See Ealy v. Commissioner of Social Sec.*, 594 F.3d 504, 516 (6th Cir. 2010)(job testimony given in response to a hypothetical question that does not account for the claimant's limitations cannot be used to support a Step Five non-disability finding); *see also Teverbaugh v. Commissioner of Social Sec.*, 258 F.Supp.2d 702, 706 (E.D. Mich. 2003)(Roberts, J)(reversible error for ALJ to rely upon unsupported job findings).

Therefore, upon remand, the ALJ must provide a satisfactory rationale for (1) why Dr. Boyle's findings, coupled with the newer records, do not support a sit/stand option, (2) why

Plaintiff would be capable of work with a sit/stand option allowing for changes of position every 30 minutes rather than the more restrictive "at will" option, or (3) elicit vocational job testimony on the effect of a more restrictive sit/stand option, including an "at will" option.

While the ALJ's failure to adequately justify the exclusion of a sit/stand option  (and the possible need for a more restrictive option) requires a remand for further proceedings, a remand for an award of benefits on this record is not warranted.  An award of benefits is appropriate "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. HHS*, 17 F.3d 171, 176 (6th Cir. 1994).

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [Docket #14] is GRANTED to the extent that the case is remanded to the administrative level for further proceedings.  Defendant's Motion for Summary Judgment [Docket #15] is DENIED.


s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: July 24, 2020

-20-

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on July 24, 2020 electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager